**COMMISSION FOR LAWYER DISCIPLINE, Appellant,**

v.

**Harold J. EISENMAN, Appellee.**

**No. 01–96–00237–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1998.

Rehearing Overruled Sept. 24, 1998.

**738**

Kurt G. Paxson, Steven L. Hughes, El Paso, for appellant.

Alan J. Winters, Houston, David M. Gunn, Houston, for appellee.

Before SCHNEIDER, C.J., and ANDELL and TAFT, JJ.

### OPINION ON MOTION FOR REHEARING

SCHNEIDER, Chief Justice.

Appellee, Harold J. Eisenman, moved for en banc rehearing of this appeal. A majority of the Justices voted to overrule the motion. The panel, however, on its own initiative, has considered the motion and found it meritorious. Accordingly, we withdraw our opinion and dissent of April 16, 1998, and substitute this opinion in their place.

We are asked to decide if Eisenman charged his client an unconscionable attorney's fee or violated the prohibition against unwritten contingency fee agreements when: (1) the contingency fee agreement specified there would be no fee if the settlement amount was $250,000 or less; (2) the parties settled for $250,000; and (3) Eisenman kept $30,000 of the settlement funds in escrow for several months. The trial court rendered summary judgment for Eisenman. We reverse.

### Facts

In 1990, Louis Wishum injured his shoulder while working for Southern Pacific railroad. His treating physician declared him permanently and totally disabled. Southern Pacific offered Wishum $250,000 for his Federal Employees Liability Act[1] claim, which he rejected. In 1992, Wishum signed a contingency fee contract with attorney Charles Medlin to pursue his claim against the railroad. The contract specified attorneys' fees would be payable only if the case settled for more than $250,000.

Medlin hired Eisenman as associate counsel and the two agreed to share any attorneys fees 50–50. They initiated settlement negotiations with the railroad's claim agent, who informed them the railroad would settle for an amount in the range of $400,000. Based on Wishum's description of the accident, the amount of damages sustained, and the presence of a corroborating witness, the attorneys believed the claim was worth significantly more money than what was offered. They broke off negotiations and filed suit.

Other facts came to light that weakened the suit against Southern Pacific. In 1991, Wishum was in an automobile accident and claimed to have injured the same shoulder. Without informing the attorneys handling the claim against the railroad, he sought treatment from a different doctor, hired a different lawyer, and obtained a $15,000 settlement. This information came out when Southern Pacific's defense counsel deposed Wishum. In addition, the eyewitness's story of how Wishum was injured on the railroad job differed from Wishum's account of how he got hurt. Three weeks after the

1. 45 U.S.C. § 51 (1986).

deposition, during mediation, Southern Pacific initially offered to settle for $100,000 and ultimately settled for $250,000. Southern Pacific deducted money for advances that had been made, and delivered a check for $231,363.56 in September 1993.

Eisenman deposited this amount in his client trust account. He reimbursed himself $12,232.99 for expenses, wrote Wishum a check for $189,130.57, and deposited $30,000 in a special trust account, labeling this check, "Wishum—fees in controversy." Wishum filed a grievance with the State Bar and sued Eisenman for the return of the $30,000. Eisenman agreed to discuss the suit and offered to put the money in the registry of the court pending resolution of the dispute, but the offer was not accepted. Eisenman eventually relinquished all claims to the $30,000 and delivered the money to Wishum early in 1994.

The Galveston County Grievance Committee found Eisenman violated disciplinary rule 1.04(a), "A lawyer shall not enter into an agreement for, charge, or collect an illegal fee or unconscionable fee." TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(a)(1989), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Vernon Supp.1998) (TEX. STATE BAR R. art. X, § 9). When the parties were unable to negotiate a sanction, the Commission for Discipline filed a disciplinary petition against Eisenman pursuant to rule 2.14 of the Rules of Disciplinary Procedure, permitting an attorney to have his complaint heard in district court. TEX.R. DISCIPLINARY P. 2.14 (1992), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1998).

Eisenman filed a motion for summary judgment. The Commission then amended its petition to add an allegation that Eisenman violated rule 1.04(d). This rule provides that a contingent fee agreement must be in writing and must state the method by which the fee is to be determined. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04(d)(1989). Eisenman filed a supplement to his motion for summary judgment. The Commission moved for partial summary judgment on violation of rule 1 .04(d). The trial court denied the Commission's motion and rendered summary judgment in favor of Eisenman based expressly on all of the grounds in his motion and supplemental motion.

## Standard of Review

In its sole point of error, the Commission contends the trial court erred in rendering summary judgment because Eisenman did not establish his right to summary judgment as a matter of law. The Commission does not argue the trial court erred in overruling its own motion for partial summary judgment.

Rule 166a(c) entitles a movant to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer. TEX.R.CIV.P. 166a(c). Ordinarily, a party appealing from the rendering of summary judgment argues there is a genuine issue of material fact to resolve. *See, e.g., Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). Here, however, the parties do not argue there are issues of fact, only issues of law.

## Grounds for Summary Judgment

In his original and supplemental motions, Eisenman moved for summary judgment on the following grounds: (1) trial was not set within 180 days of the date the disciplinary petition was filed, in violation of rule 3.07 of the Rules of Disciplinary Procedure (1992); (2) the Commission could not amend its petition; (3) he did not violate disciplinary rules 1.04(a) or 1.04(d) because he was entitled to recover under *quantum meruit,* he did not "charge" a fee, and, if he did charge a fee, it was neither unconscionable nor illegal.

### 1. Trial Setting—Rule 3.07

A disciplinary proceeding commences when a complaint is filed. TEX.R. DISCIPLINARY P. 1.06(F) (1992). A complaint was filed against Eisenman on September 21, 1993. Rule 3.07 was amended effective October 1, 1994. However, TEX.R. DISCIPLINARY P. 1.04 provides that amended rules apply to disciplinary actions commenced after the effective date. Accordingly, the former version of rule 3.07 applies. It provides:

The court shall set each Disciplinary Action for trial no later than 180 days after the date the Disciplinary Petition is filed with the district clerk. No motion for continuance, resetting, or agreed pass may be granted unless required by the interests of justice. Mandamus lies to enforce this rule upon the petition of the Chief Disciplinary Counsel or the Respondent.

TEX.R. DISCIPLINARY P. 3.07 (1992). The disciplinary petition was filed December 16, 1994. June 14, 1995 was the 180th day after the petition was filed. The case was set for trial to begin April 27, 1995. Eisenman sought and obtained a transfer of venue from Harris County to Galveston County and he and the Commission agreed to continue the trial and reschedule it in Galveston. In August, the trial court entered an order setting the case for trial on November 27, 1995.

■ The Commission characterizes the rule as one of preference, and analogizes it to the former Speedy Trial Act.[2] It argues Eisenman waived enforcement of the 180–day limit when he agreed to a continuance and did not seek to enforce the limit by filing a petition for mandamus as permitted by the rule. Further, it asks us to deem an implied finding that the pass was required by the interests of justice because the trial court reset the trial to November.

Eisenman analogizes the rule to a dismissal for want of prosecution and asks us to interpret it to mean that, unless trial actually commences before the 180 days expires, outright dismissal is justified. He argues the agreed pass is immaterial because the trial court rendered summary judgment on this ground, and we should deem an implied finding by the trial court that granting the pass was not required by the interests of justice. He further argues rule 3.07 imposes no duty to seek mandamus relief.

■ The revised rule directs the court to set the trial "to commence" within 180 days, whereas the former rule simply directs the court to set the proceeding "for trial" within 180 days. Whether we read the former rule to mean the trial must be *set* within 180 days or that it must *commence* within that time,

we interpret it as a rule of preference. The rule clearly authorizes an extension of time because it permits an agreed pass, continuance, or resetting, if required by the interests of justice. It would be manifestly unfair to permit the court to acquiesce to an agreed pass, but then be required to dismiss the action. Because Eisenman sought a change of venue, we are persuaded that the continuance was required in the interests of justice. Summary judgment was not proper on this ground.

## 2. Amended Pleading

■ In October 1995, the Commission filed an amended pleading, charging Eisenman with violating rule 1.04(d). Eisenman challenged the authority of the special disciplinary counsel to amend its petition. On appeal, he also argues the allegation was baseless because there was a written contingent fee agreement, and it is this agreement he was charged with violating.

The Commission is permitted to add allegations based on a violation of a different subsection of the article, even during trial. *See State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 657–58 (Tex.1994). Summary judgment was not proper on this ground.

## 3. Rule 1.04(d)—Unwritten Contingency Fee Agreement

■ In its amended pleading, the Commission contended there was no written contingent fee agreement between the parties authorizing a fee of $30,000. Eisenman responded by arguing that a client's breach of a contingency fee contract permits an attorney to recover under *quantum meruit.*

■ Texas courts permit an attorney to recover under *quantum meruit* despite a contingency fee contract only when (1) the client discharges the attorney after partial or full performance; (2) the client settles the case without the attorney's knowledge or consent; or (3) the attorney and client mutually abandon the contract. *See, e.g., Diaz v. Attorney General*, 827 S.W.2d 19, 23 (Tex. App.—Corpus Christi 1992, no writ; *Muller v. Nelson, Sherrod & Carter*, 563 S.W.2d 697,

**2.** Act of May 23, 1977, 65th Leg., R.S., ch. 787, § 1, 1977 Tex.Gen.Laws 1970, 1970.

698 (Tex.Civ.App.—Fort Worth 1978, no writ); *Howell v. Kelly*, 534 S.W.2d 737, 740 (Tex.Civ.App.—Houston [1st Dist] 1976, no writ). Eisenman presented no summary judgment proof of any of these circumstances. Even if he had, his remedy was to sue Wishum, not to withhold the disputed amount. When he withheld it, he violated the rule against unwritten contingency fee agreements.

A "contingent" fee is one that is dependent on the outcome of a matter. *See* Tex. Disciplinary R. Prof'l Conduct 1.04(d). The commentary to the rules notes, "Once a fee arrangement is agreed to, a lawyer should not handle the matter so as to further the lawyer's financial interests to the detriment of the client." *Id.*, cmt. 6.

In deposition, Eisenman testified, "I based it [the $30,000 fee] on a small percentage of—of his recovery. . . ." Because this charge was based on the outcome, it was a contingent fee. In effect, Eisenman changed the terms of the original contingency fee agreement without notifying his client. He did not put this change into writing, nor state the method by which he calculated the fee, nor identify what expenses would be deducted, all of which are required by the rules to be included in a written contingency fee agreement. Accordingly, he violated rule 1.04(d).

To hold otherwise would permit an attorney to enter into a written fee agreement, then unilaterally alter its terms to recover additional fees, thus rendering rule 1.04(d) meaningless. Summary judgment was improper on this basis.

### 4. Rule 1.04(a)—Charging an Illegal or Unconscionable Fee

█ Eisenman contends he never "charged" Wishum a fee within the meaning of the rule. The rule is very broad in its prohibition against agreeing to, charging, or collecting an illegal or unconscionable fee. The dictionary definition of "charge" as "to ask payment of" applies. Once Eisenman placed the money in escrow and identified it as a disputed fee, he "charged" Wishum $30,000 for his services.

Eisenman further argues he was entitled to charge a fee because his client breached the contingency fee contract by materially misrepresenting the facts of his case. Although Eisenman may have had a claim for equitable relief, his remedy was to sue.

█ Finally, Eisenman argues he followed the disciplinary rules because he placed the disputed fees into an escrow account. Rule 1.14 provides in pertinent part:

> When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and another person claim interest, the property shall be kept separate by the lawyer. . . . If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate until the dispute is resolved.

Tex. Disciplinary R. Prof'l Conduct 1.14 (1989). What distinguishes Eisenman's action in segregating the $30,000 is that, based on the terms of the contingency fee agreement he had with Wishum, he could not legitimately claim any interest in the funds paid in settlement of Wishum's claim.

Eisenman contends on appeal the fee was neither illegal nor unconscionable, but argued before the trial court only that the fee was not unconscionable. The Commission argues that, because the contingency fee agreement barred recovery of a fee if the case settled for $250,000 or less, *any* fee charged would have violated rule 1.04(a) as a matter of law.

A fee is unconscionable if "a competent lawyer could not form a reasonable belief that the fee is reasonable." Tex. Disciplinary R. Prof'l Conduct 1.04(a). Eisenman attached affidavits to his motion for summary judgment in which two practicing attorneys expressed their subjective belief that $30,000 was a reasonable fee under the circumstances. There may be other competent attorneys, however, who could not form a reasonable belief that the fee was reasonable, and neither affiant addressed this objective standard.[3] Accordingly, Eisenman did not

---

3. We liken this to the burden carried by a police officer who invokes the affirmative defense of good faith immunity, who is judged against an objective "reasonable officer" standard. The de-

negate unconscionableness as a matter of law. Because there is a genuine issue of material fact regarding the reasonableness of the fee, summary judgment was not proper on this ground.

Rendition of summary judgment was not proper on any ground. We reverse the judgment and remand the cause to the trial court.

fendant officer must not only submit an affidavit swearing he personally acted in good faith, but also an expert's affidavit swearing a reasonable officer, faced with the defendant's situation, would have acted as he did.